IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| DORETHEA LYNN SODDERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 6:14-CV-57 |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

Plaintiff Dorethea Lynn Sodders ("Sodders") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Specifically, Sodders alleges that the ALJ erred by failing to give the opinion of her treating and examining counselor appropriate weight and that additional evidence submitted to the Appeals Council warrants remand for consideration by the Commissioner. I agree that the additional evidence submitted to the Appeals Council is new, material, and should be considered by the Commissioner. Accordingly, I hereby **DENY** the Commissioner's Motion for Summary Judgment (Dkt. No. 16), and **GRANT in part** Sodders' motion for summary judgment (Dkt. No. 12), remanding this case for further administrative consideration consistent with this Memorandum Opinion.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Sodders failed to demonstrate that she was disabled

---

[1] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Sodders protectively filed her application for DIB on June 6, 2011. R. 79, 154–58. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 94–98, 102–08. On July 22, 2013, a video hearing was held before Administrative Law Judge ("ALJ") Mary C. Peltzer to consider Sodders' disability claim. R. 39–69. Sodders was represented by an attorney at the hearing, which included testimony from vocational expert, Andrew Beale. Id.

On August 14, 2013, the ALJ entered her decision analyzing Sodders' claim under the familiar five-step process,[3] and denying Sodders' claim for disability. R. 16–38. The ALJ found

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

that Sodders suffered from the severe impairments of migraine headaches, minor degenerative changes of the lumbar spine, chronic obstructive pulmonary disease ("COPD"), and mental disorders. R. 21. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 22–23. The ALJ further found that Sodders retained the residual functional capacity ("RFC") to perform light work, with occasional climbing of ramps/stairs; no climbing ladders/ropes/scaffolds; occasional balancing; frequent stooping, kneeling, crouching or crawling; no more than occasional exposure to extreme heat, humidity, respiratory irritants (such as dust and fumes), and workplace hazards (such as dangerous moving machinery), but no exposure to unprotected heights. R. 24. Based on this RFC, Sodders was incapable of returning to her past relevant work (R. 32), but could perform the requirements of representative occupations at the light exertion level, which exist in significant numbers in the national economy. R. 33.

Sodders submitted additional evidence to the Appeals Council, which the Appeals Council accepted into the record. R. 1–6. On October 22, 2014 the Appeals Council denied Sodders' request for review, and the ALJ's decision became the Commissioner's final decision. Id. This appeal followed.

## ANALYSIS

Sodders argues that the ALJ failed to properly consider the opinion of her treating counselor, licensed professional counselor Marsha Divers-Wiggs, and that additional evidence submitted to the Appeals Council warrants remand under 42 U.S.C. § 405(g).

### Counselor's Opinion

Sodders first argues that the ALJ erred by giving little weight to the opinion of her treating counselor, LPC Marsha Divers-Wiggs, and instead giving some weight to the opinions

3

of the state agency reviewing physicians. In determining Sodders' residual functional capacity, the ALJ considered a Mental Residual Functional Capacity Questionnaire completed by Ms. Divers-Wiggs in which she found that Sodders had extreme limitations in her abilities to perform in a regular work setting. The ALJ gave this opinion little weight, finding it inconsistent with other evidence in the record. R. 31. Instead, the ALJ gave greater weight to the opinions of the state agency reviewing and consultative physicians, who found Sodders physically capable of performing a range of medium work and further that she was "capable of performing routine tasks on a sustained basis (if motivated)." R. 31–32.

As a licensed professional counselor, Ms. Divers-Wiggs is not an acceptable medical source as defined by the Act. 20 CFR §§ 404.1527(c), 416.927(c) (defining acceptable medical sources as licensed physicians, licensed or certified psychologists, and—for limited purposes—licensed optometrists, licensed podiatrists, and qualified speech-language pathologists). Nevertheless, the ALJ "has a duty to consider all of the evidence available in a claimant's case record, includ[ing] such evidence provided from 'other' nonmedical sources" such as licensed clinical social workers. Ingle v. Astrue, 1:10CV141, 2011 WL 5328036, at *3 (W.D.N.C. Nov. 7 2011) (citing Social Security Ruling ("SSR") 06–03p; 20 CFR §§ 404.1513(d), 416.913(d)). Evidence from these non-acceptable medical sources cannot be used to establish the existence of a medically determinable impairment; nevertheless, "such sources may provide evidence, including opinion testimony, regarding the severity of the claimant's impairments and [how] such impairment[s] affect the individual's ability to function." Id. (citing SSR 06–03p; 20 CFR §§ 404.1513(d), 416.913(d)); see also Ledbetter v. Astrue, 8:10–CV–00195–JDA, 2011 WL 1335840, at *10 (D.S.C. April 7, 2011) ("[O]pinions from medical sources, even when not 'acceptable medical sources,' are important and should be evaluated on key issues such as

impairment severity and functional effects." (citing SSR 06–03p)); Foster v. Astrue, 826 F. Supp. 2d 884, 886 (E.D.N.C. 2011); Social Security Ruling 06-03p.

To determine the weight given to the opinion of a source who is not an "acceptable medical source" as defined by the Act, the ALJ must consider: (1) the length of time the source has known the claimant and the frequency of their contact; (2) the consistency of the source's opinion with the other evidence; (3) the degree to which the source provides supportive evidence; (4) how well the source explains his or her opinion; (5) whether the source has an area of specialty or expertise related to the claimant's impairments; and (6) any other factors tending to support or refute the opinion. Beck v. Astrue, 3:11-CV-00711, 2012 WL 3926018, at *12 (S.D. W. Va. Sept. 7, 2012) (citing SSR 06–03p).

Here, Ms. Divers-Wiggs met with Sodders on fifteen occasions over five months, from January 21, 2013 to June 17, 2013. On July 2, 2013, Ms. Divers-Wiggs completed a Mental RFC Questionnaire indicating that Sodders had no useful ability to function in the areas of dealing with normal work stress, performing at a consistent pace without requiring an unreasonable number of work breaks, and completing a normal workday/workweek without interruptions from psychologically based symptoms. R. 787. Ms. Divers-Wiggs also found that Sodders was unable to meet competitive standards in the areas of maintaining regular attendance and being punctual, sustaining an ordinary routine without special supervision, making simple work-related decisions, responding to changes in an ordinary work setting, traveling to unfamiliar places, and using public transportation. Id.

The ALJ found that Ms. Divers-Wiggs' opinion (R. 785–90) should be given little weight because (1) it was inconsistent with the medical record, (2) it was internally inconsistent, and (3) it was inherently limited by the duration of the treatment relationship. Specifically, the ALJ

found that the medical records as a whole indicate that Sodders' mental conditions were generally controlled by medications. R. 31. After reviewing the record I find that substantial evidence supports the ALJ's findings.

The record reflects that Sodders suffers from panic attacks, depression and migraines which were alleviated with medication. Sodders reported to Diane L. Rowell, M.D., on June 16, 2011 that James W. Gallagher, M.D., had increased her Klonopin dosage and that her panic attacks had decreased in severity and duration while on medication. R. 386. Dr. Rowell's notes also indicated that Sodders' depression was "stable." Id. On October 7, 2011, Sodders again reported to Dr. Rowell that her depression was "stable" and that her panic attacks were "worse without medication." R. 608. On November 7, 2011, Sodders reported to Dr. Rowell that Topamax was working well to control her migraines and that her depression was "mild." R. 610.

On October 21, 2011, state agency psychologist, Louis Perrott, Ph.D., reviewed the available record and analyzed Sodders' mental conditions and limitations. R. 74–75. Dr. Perrott concluded that Sodders had been diagnosed with anxiety and depression and had only mild limitations in maintaining social functioning and maintaining concentration, persistence, or pace. R. 74. On February 9, 2012, state agency psychiatrist, Thomas Conger Ph.D., reviewed the record and determined that Sodders had mild limitations in daily living and maintaining social functioning, and moderate limitations in maintaining concentration, persistence, and pace. R. 85–86.

On October 21, 2011, state agency medical consultant Robert Keeley reviewed the record and concluded that Sodders had the physical capacity to occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk 6 hours in an 8 hour workday, and sit for a total of 6 hours in an 8 hour workday. R. 75–76. On February 9, 2012, state agency physician, Bert Spetzler, M.D., on

6

reconsideration agreed with the restrictions suggested by Mr. Keeley. R. 87–89. Dr. Spetzler also indicated that Sodders could occasionally climb ramps and stairs and balance but never climb ladders, ropes, or scaffolds, and that she should avoid even moderate exposure to hazards. R. 88. Thus, the acceptable medical opinions in the record all found that Sodders was capable of performing a range of light work.

The ALJ also noted that the severe symptoms listed in Ms. Divers-Wiggs' opinion were inconsistent with the trend of moderate GAF scores found throughout Ms. Divers-Wiggs' treatment notes.[4] In Ms. Divers-Wiggs' initial assessment, dated January 21, 2013, she assessed Sodders' GAF score as 55. R. 772. In the July 2, 2013 Mental RFC Questionnaire, Ms. Divers-Wiggs' assessed Sodders' current GAF score as 57 and her highest GAF score for that year was 58. R. 785. These scores indicate moderate symptoms, and do not correspond with the severe restrictions suggested by Ms. Divers-Wiggs' opinion.

Finally, Sodders' first appointment with Ms. Divers-Wiggs was in January of 2013; thus Ms. Divers-Wiggs could not offer a credible assessment of the limitations Sodders had when she was terminated from her job in 2011. Ms. Divers-Wiggs could only speculate about Sodders' condition at the time of her termination, relying on the report that she "was asked to leave her

---

[4] The GAF Scale is used by mental health professionals to rate overall functioning and considers the psychological, social, and occupational functioning of an individual on a hypothetical continuum of 1 to 100. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. Rev.2000) (DSM IV ), with 100 being the most high-functioning. The DSM IV defines GAF scores as follows: a score of 41–50 suggests serious symptoms or serious impairment in social or occupational functioning; a score of 51–60 suggests moderate symptoms or difficulty in social or occupational functioning; a score of 61–70 suggests mild symptoms or some difficulty in social, occupational, or school functioning. DSM IV. The GAF has been dropped from the Fifth Edition of the DSM, published in 2013, due in part to its "conceptual lack of clarity" and "questionable psychometrics in routine practice." DSM–5 at 16. Any particular GAF score has limited usefulness in a disability determination because it shows only how the claimant is functioning on a particular day and not whether the claimant has mental limitations affecting the ability to engage in competitive work. Nevertheless, the mental health providers who treated Sodders assessed her GAF during her evaluations throughout the relevant period and the ALJ discussed the scores. Thus, they are part of the medical evidence.

7

last job due to an inability to perform it," but she was "not exactly sure" when Sodders first had the extreme mental health limitations. R. 790.

Considering the record as a whole, there is substantial evidence to support the ALJ's conclusion to give Ms. Divers-Wiggs' opinion little weight. The issue on appeal is not whether it is plausible that a different fact finder could have drawn a different conclusion, or even if the weight of the evidence supports a finding of disability. The standard is whether the ALJ's decision is supported by substantial evidence. So long as this standard—defined as more than a mere scintilla but perhaps somewhat less than a preponderance—is met, I cannot recommend reversing the ALJ. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted).

## **Additional Evidence**

Sodders also contends that her claim should be remanded for further administrative consideration on the basis of additional medical opinions that were not before the ALJ, but were later submitted to the Appeals Council. Specifically, Sodders relies upon a Mental Residual Functional Capacity Questionnaire completed by James W. Gallagher, M.D., on October 10, 2013, and a Physical Residual Functional Capacity Questionnaire completed by Dr. Rowell on October 11, 2013. Both Drs. Gallagher and Rowell are medically acceptable treating source physicians under the regulations. 20 C.F.R. § 404.1513(a). The Appeals Council considered the additional evidence but found that it did not provide a basis for changing the ALJ's decision. R. 2. I find that remand is proper in light of these additional medical opinions from Drs. Gallagher and Rowell to allow the ALJ to consider the evidence in the record as a whole.

When deciding whether to grant review, the Appeals Council must consider additional evidence, "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dep't of Health and Human Servs., 953

8

F.2d 93, 95–96 (4th Cir. 1991). Evidence is new if it is not duplicative or cumulative. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. Id. Upon the Appeals Council's denial of Sodders' request for review, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981. As such, this Court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings. Wilkins, 953 F.2d at 96. "However, the Fourth Circuit has also admonished that it is the role of the ALJ, and not reviewing courts, to resolve conflicts in the evidence." Davis v. Barnhart, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005) (citing Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)). Thus, when faced with new evidence, a court must reconcile its duty under Wilkins to review the entire record including the new evidence to determine if there is a reasonable possibility that it would change the outcome, with its obligation under Smith to abstain from making credibility determinations and resolving factual conflicts. Davis, 392 F. Supp. 2d at 751.

Courts in this district have achieved that balance by reviewing the record as a whole to determine if the new evidence is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports. If the new evidence creates such a conflict, there is a reasonable possibility that it would change the outcome of the case, and the case must be remanded to the Commissioner to weigh and resolve the conflicting evidence. If such conflicts are not present, the case can be decided on the existing record without a remand. Id. (citing Bryant v. Barnhart, No. 6:04cv000017, 2005 WL 1804423, *5 (W.D. Va. Jan 21, 2005); Smallwood v. Barnhart, No. 7:03cv00749, slip op. at 2 (W.D. Va. Oct. 19, 2004); Ridings v. Apfel, 76 F. Supp. 2d 707, 709 n. 6 (W.D. Va. 1999); Thomas v. Commissioner, 24 F. App'x

9

158, 162, 2001 WL 1602103, at *4 (4th Cir. 2001) (unpublished opinion); McConnell v. Colvin, No. 2:02cv00005, 2013 WL 1197091, at *7 (W.D. Va. March 25, 2013)).

Here, the evidence reflects that Dr. Gallagher completed a Mental RFC Questionnaire on October 10, 2013, two months after the ALJ's decision. R. 873–77. Dr. Gallagher noted that he treated Sodders on a monthly and "as needed" basis. R. 873. In his opinion, Dr. Gallagher diagnosed Sodders with depressive disorder, bipolar disorder, intermittent explosive disorder, panic disorder, and PTSD. Id. He found that Sodders' symptoms included auditory hallucinations, decreased appetite, weight loss, sleep disturbance, poor concentration, poor memory, feelings of helplessness, guilt and worthlessness, and a passive death wish. Id. Dr. Gallagher indicated that Sodders was "unable to meet competitive standards" in all areas of mental abilities and aptitudes needed to do unskilled work, except for adhering to basic standards of neatness and cleanliness. R. 875. Dr. Gallagher found Sodders would likely be absent from work more than four days a month and was not a malingerer. R. 877.

Dr. Rowell completed a Physical RFC Questionnaire on October 11, 2013, two months after the ALJ's decision. R. 880–84. Dr. Rowell diagnosed Sodders with degenerative disc disease, osteoarthritis, angina, COPD, fatigue, syncope, depression, and panic disorder. R. 880. She noted that Sodders' symptoms included chest pain, numbness, shortness of breath, fatigue, and inability to concentrate. Id. Dr. Rowell determined that Sodders would be incapable of holding even "low stress" jobs. R. 881. Dr. Rowell indicated that Sodders could sit for 20–30 minutes at a time and could stand 10 minutes at a time (R. 881); sit "about 4 hours" and stand/walk less than 2 hours total in an 8 hour workday (R. 882); rarely lift more than 10 pounds and never stoop, crouch/squat or climb stairs (R. 882–83); and has a significantly reduced ability

to use her hands, fingers, and arms (R. 883). Dr. Rowell concluded Sodders would be absent from work about two days a month. Id.

I find that the opinions of Drs. Gallagher and Rowell meet the requirements of Wilkins and that remand is proper for full consideration of these records. These records are "new" because they were not present in the record before the ALJ's decision. The opinions from Drs. Gallagher and Rowell also relate back to the period before the ALJ's decision. These opinions were provided just two months after the ALJ's decision, and the medical evidence reflects that Sodders had been seeing Drs. Gallagher and Rowell since at least 2010 on a monthly and "as needed" basis. R. 365, 620, 873, 880. Dr. Gallagher began seeing Sodders in April 2008 for her mental impairments and continued treating her through December 2011. R. 268–283, 630. Likewise, Dr. Rowell began treating Sodders in 2010 for her physical complaints, and treated Sodders, regularly, on an "as needed" basis, through April 2013. R. 365, 810.

Further, Drs. Gallagher and Rowell's opinions are largely consistent with their respective treatment notes. For example, Dr. Gallagher consistently treated Sodders for depressive disorder, intermittent explosive disorder, panic disorder, and PTSD. R. 619–31, 873. Similarly, Dr. Rowell's opinion notes conditions and symptoms referenced throughout her treatment notes, including COPD, depression, panic disorder, shortness of breath, anxiousness, fatigue, and inability to concentrate. R. 608–18, 880. Thus, there is no suggestion in the record that Sodders had a change in mental or physical health from the time of the ALJ's decision to the time these medical source opinions were rendered.

I also find a reasonable possibility that these opinions could change the outcome of the ALJ's decision. The ALJ relied entirely upon the opinions of state agency reviewing physicians in determining Sodders' RFC. In fact, the ALJ specifically noted in her decision that "the record does not contain any opinions from treating or examining physicians or psychiatrists indicating that the

11

claimant has limitations greater than those determined in this decision." R. 30. These new medical source opinions contradict the conclusions reached by the state agency experts, and indicate limitations in excess of those delineated in the ALJ's decision. Further, unlike Ms. Divers-Wiggs, Drs. Gallagher and Rowell are both medically acceptable sources and had a treatment relationship with Sodders dating back until at least 2011. While the ALJ had the benefit of Drs. Gallagher and Rowell's treatment notes in the record, those notes do not contain the doctors' opinions as to Sodders' functional capacity.

Ultimately, it is not up to this court to decide whether the opinions of Drs. Gallagher and Rowell have any impact on this decision. The law is clear that "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with the reviewing court." Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996) (citing Kasey v. Sullivan, 3 F.3d 75, 79 (4th Cir. 1993)). In light of the conflict between the ALJ's finding that Sodders was not disabled and the additional medical opinion evidence, I am unable to determine whether substantial evidence supports the final decision of the Commissioner to deny benefits to Sodders. The ALJ did not have an opportunity to consider the Mental RFC Questionnaire completed by Dr. Gallagher or the Physical RFC Questionnaire completed by Dr. Rowell. The ALJ has not evaluated what, if any, these new opinions show about Sodders' functional capacity. The court cannot speculate as to the influence these records may have on the ALJ's decision. It may be that these records do not alter the outcome of the ALJ's analysis. That decision does not rest with the court, however, and as there is a reasonable probability that the additional evidence will change the outcome, the law requires that I remand the case. See, e.g., Burton v. Colvin, CA 4:11-03335-CMC, 2013 WL 3551120, at *3 (D.S.C. July 11, 2013) ("In light of the new evidence that appears to conflict with one or more critical bases in the ALJ's opinion, and the lack of explanation by the Appeals Council as to why that new evidence did not affect Plaintiff's disability determination, the court cannot say that the ALJ's decision is supported by substantial evidence.").

Therefore, I find remand of Sodders' claim is proper under sentence four of 42 U.S.C. § 405(g) for consideration of this additional evidence and the record as a whole.

## **CONCLUSION**

Accordingly, the defendant's motion for summary judgment is **DENIED**, Sodders' motion for summary judgment is **GRANTED in part**, and this case is **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g) with instructions that the ALJ consider all of the records submitted to the Appeals Council.

Enter: March 16, 2016

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge